**SCHLEICHER COUNTY v. HUD-GENS et al.**

**No. 4906.**

Court of Civil Appeals of Texas.
El Paso.

Dec. 3, 1952.

Rehearing Denied Jan. 14, 1953.

Rountree, Renner & Snell, Lamesa, for appellant.

John H. Splawn, Jr., and Bob Huff, Lubbock, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Gaines County. There are practically three sets of plaintiffs. Each set of plaintiffs claimed a labor of land out of League 283 of Schleicher County School Land situated in Gaines County. C. L. Hudgens and several others jointly claim title to Labor No. 21, Mrs. Mary E. Bomar as plaintiff claims Labor No. 22, John E. Brewer claims Labor No. 24. The plaintiffs each and all assert fee simple title to the labor claimed by them, and seek to quiet their title as to the defendant, Schleicher County. The defendant's answer consists of a number of special exceptions, pleads the two and four years statute of limitations. As to Labor No. 21 the court denied the plaintiffs claiming same all relief. As to Labor No. 22 the court finds in favor of plaintiff Mary E. Bomar, and quiets her title thereto. The court further found in favor of plaintiff John E. Brewer as to Labor No. 24. Plaintiffs Mary E. Bomar and John E. Brewer were denied any recovery as to any overpayments made to defendant Schleicher County.

Defendant Schleicher County has perfected this appeal from such judgment, insofar as it was adverse. The court overruled all of the special exceptions urged by defendants. Most of appellant's 39 points of error urge error in overruling special exceptions. Most of these exceptions are perhaps true demurrers in that they raise issues of law. The court on the motion of defendant Schleicher County filed findings of fact and conclusions of law. We adopt these findings of fact and conclusions of law as our own. It is thought that all the issues arising on this appeal will appear therefrom.

The findings of fact and conclusions of law will be set out in full:

"Findings of Fact.

"1. On March 25, 1908, Schleicher County, acting by and through its Commis-

sioners' Court in due and legal form, executed a deed of conveyance conveying to W. L. Saye certain lands described in the conveyance as Leagues 283, 284, 285 and 286 situated in Gaines County, Texas, and being the lands granted to Schleicher County under the Constitution and laws for Public School purposes. The consideration expressed was $6.50 per acre, and Saye executed on the same date his vendor's lien note for the entire purchase price due and payable forty years from date, bearing five per cent interest per annum payable in advance.

"The conveyance provided that failure or refusal of Saye, or any of his assignees, to pay any installment of interest within thirty days after due date matured all indebtedness owed by such defaulter, and that Schleicher County under such conditions was authorized by an Order entered on the Minutes of its Commissioners' Court to declare the sale to Saye, or any of his assignees, duly forfeited against such defaulting person, and that the title to the land so forfeited should revert to and reinvest in Schleicher County.

"The conveyance further provided that upon the sale of any subdivision by Saye such subdivision should stand relieved from the vendor's lien created on the four leagues by Saye, but should be subject to a vendor's lien securing the principal and five per cent interest on the acreage so subdivided 'at the rate of $6.50 per acre' for the land.

"It provided that Saye, before the sale of any of the subdivision, should have the land platted and the subdivisions numbered, filing said map and plat with the County Clerk of Gaines County, to be recorded in such county, and filing a certified copy with the County Clerk of Schleicher County.

"The vendor's lien on the lands was retained both in the deed and in the note executed by Saye.

"2. It being 'stipulated by and between counsel for Plaintiffs and Defendant that the Chain of title is in order from' the deed of Schleicher County to Saye 'down to the plaintiffs', the Court finds that by a regular chain of title the title to Tract 21 of League 283, is vested in C. L. Hudgens,

et al., Plaintiffs; title to Subdivision 22, League 283, was vested in Mary E. Bomar; and title to Tract or Subdivision 24, League 283, was vested in Plaintiff, John H. Brewer.

"3. Title in Hudgens to Tract 21 was acquired by general Warranty Deed from E. H. Farrow, dated November 18, 124, and the land was described as containing 177 acres, more or less. Hudgens assumed payment of $6.50 per acre due Schleicher County on the described land.

"4. On November 12, 1929, by general Warranty Deed from Charles Stifflemore, Bomar acquired land described as being Labor 22 of League 283. Part of the consideration was the assumption by grantee of 'the sum of $6.50 per acre owing on each acre of land conveyed', which was due to Schleicher County on the original purchase price, and the assumption of the payment of all accrued interest from July 1, 1928.

"5. Plaintiff, John H. Brewer, acquired title to the land described as Labor 24, of League 283, by general Warranty Deed dated January 20, 1928, executed by M. C. Lindsey and wife. As part consideration, Brewer assumed the payment of the $6.50 per acre debt due Schleicher County for purchase price, and the interest thereon at five per cent, commencing with the installment of interest due in 1928.

"6. Block M, E. L. & R. R. R. Co. survey joins League 283 on the East with Section 139 of Block M being adjacent to and east of Labor 21 of League 283; Sections 139 and 138 of Block M being adjacent to and east of Labor 22; and with Sections 138 and 137 of Block M being adjacent to and east of Labor 24, of League 283.

"Block M and the three sections thereof mentioned above were all surveyed either in 1879 or prior thereto, and field notes to the same were filed in the Land Office at Austin.

"League 283 was surveyed and its lines were run in 1883 under and by authority of the Act of April 7, 1883, General Laws of Texas, Chapter 55. Such original survey of League 283 did not show Subdivision into Labors.

"Neither the field notes of such original survey, nor the patent issued, showed any call for any part of Block M.

"7. Block M, and particularly Section 137, 138 and 139, which lie immediately east of Labors 21, 22 and 24, are all older and Senior surveys to League 283.

"8. There is a conflict between League 283 and Block M—100.2 acres of what is designated as Labor 21 being in conflict with Section 139 of Block M with 76.9 acres of 21 not being in conflict; 98.4 acres of what is designated as Labor 22 is in conflict with Section 138 and 139 of Block M, and 78.7 acres of 22 is not in conflict; 94.8 acres of the tract designated as Labor 24 is in conflict with Sections 137 and 138 of Block M, and 82.3 acres of 24 is not in conflict.

"9. At the time of the original sale to Saye of the four leagues, and at the time each of the Plaintiffs herein acquired title to their respective tracts, all parties concerned in either of such transactions, including Schleicher County and its Commissioners' Court, Saye, and these plaintiffs, were without knowledge of the conflict between League 283 and Block M and all mistakenly thought each subdivision was a full labor of 177.12 acres.

"Prior to January 1, 1949, Schleicher County and its Commissioners' Court did have knowledge of the conflicts.

"Tract 21 contains only 76.9 acres and Farrow conveyed only that acreage; Stifflemire's deed only conveyed to Bomar 78.7 acres, and Lindsey's deed to Brewer conveyed only 82.3 acres.

"10. The only payments made by Hudgens after acquiring the land was a total sum of $863.40, no payments being made on such land by him subsequent to 1939, and such payments in the said sum of $863.40 were not a sufficient sum to pay the principal and accrued interest on 76.9 acres, counting only such interest as accrued prior to March 25, 1948, when the note matured in full. The sum was paid in fifteen annual payments of $57.56, being intended as interest.

"11. On Tract 22 Bomar paid interest of $57.56 annually, being the amount of interest due on 177.12 acres for eight years,

totaling $1,036.08. He paid it and it was received in the mistaken belief that 177.12 acres had been conveyed. The 78.7 acres belonging to him at $6.50 per acre would equal the sum of $511.55 principal due, and the interest at five per cent per annum on such sum of $511.55 is the sum of $25.58 per annum, Bomar by the deed having assumed the interest payments commencing with the payment due July 1, 1928, and the last interest payment being payable in advance being due on July 1, 1947, Bomar was obligated to pay twenty years' interest, and $25.58 interest per annum for twenty years would be the sum of $511.60, totaling principal and interest that should have been paid by Bomar on Tract 22 of $1,023.-15, which is a sum less than the $1,036.08 actually paid by him prior to March 25, 1948.

"The Court here now finds, whether through typographical error or otherwise, the total sum shown in the judgment heretofore signed by the Court as being paid by Bomar was in error.

"12. The Plaintiff Brewer, in the mistaken belief that he owed interest on a full labor of 177.12 acres, paid to Schleicher County the sum of $57.56 for twenty-one years, from 1928 to 1948, inclusive, totalling the sum of $1,208.76. The Plaintiff Brewer only acquired 82.3 acres, which at $6.50 per acre would be $534.95 principal due on land actually received. The total amount of principal and interest due by Brewer after acquiring the land was $1,-096.07 on 82.3 acres, a sum less than the total sum of $1,208.76 paid by him, all prior to March 25, 1948, when the principal matured, and prior to the forfeiture hereinafter mentioned.

"13. At the time that each tract of land was acquired herein by respective plaintiffs, interest had been paid in full, or was thereafter paid by each plaintiff on the basis of $57.56 per annum.

"14. On March 26, 1951, the plaintiff presented to the Commissioners' Court, a demand and request for an adjustment as to Labor 21, and a settlement of the indebtedness as to Labor 22 on behalf of Plaintiff Bomar, and an adjustment and settlement as to Labor 24 in behalf of John E.

Brewer. The Commissioners' Court by its order of same date rejected such application, request and demand. The Court had theretofore, to wit; on Jan. 29, 105, entered its order, legal and proper in form, forfeiting Labors 21, 22 and 24 as against these Plaintiffs.

"Conclusions of Law.

"1. Because Block M is the older and *seiour* survey to League 283, the land in conflict in the two surveys properly belongs in and is a part of Block M, and forms no part of League 283, so that as a matter of Law Labor 21 contains only 76.9 acres, Labor 22 contains only 78.7 acres, and Labor 24 contains only 82.3 acres.

"2. That part of $57.56 paid by each plaintiff each year that was in excess of the interest due on the land actually acquired and owned by each Plaintiff should as a matter of equity be applied on the payment of the principal due on the land actually received by each Plaintiff.

"3. The total sum paid by Hudgens, et al. on Tract 21 being a lesser sum than the amount of the principal and interest owed by them on Tract 21, and for which they were liable, and there being a balance due to Schleicher County as of March 25, 1948, and as of the date of the forfeiture by Schleicher County, Schleicher County was authorized by the terms of the original contract of purchase by and between Schleicher County and Saye to forfeit the title to Tract 21 and to reinvest the same in Schleicher County, and to divest Hudgens, et al of all title and interest, and the act of the Commissioners' Court in so entering an order of forfeiture was valid, legal, and binding as to Hudgens, et al. as to Tract 21 and fully vesting all right, title and interest in Schleicher County.

"4. Plaintiff Bomar having prior to March 25, 1948, the date the purchase money matured, paid by annual payments of $57.56 each year a total sum in excess of all interest for which they were liable and the amount of principal due on the acreage actually acquired by them, and being entitled as a matter of equity to having the excess interest paid by them applied upon the principal, had fully paid all principal and interest on the land actually received by them, and was entitled to a release from Schleicher County, and the forfeiture subsequent to March 25, 1948, by Schleicher County as against Tract 22 was and is null and void and should be set aside, and Tract 22 is vested in the plaintiff Bomar free from any right, title, interest, lien or claim of any kind on the part of Schleicher County.

"5. The Plaintiff Brewer having paid a sum in excess of the amount of principal and interest actually due upon the acreage which he actually acquired is entitled to a release from Schleicher County, and Schleicher County has no further right, title or interest in Labor 24, and the Plaintiff Brewer has full title to Labor 24 free from any and all claims, right, title, or interest of Schleicher County.

"6. Any excess payments made by either Plaintiff Bomar or Brewer should not be recovered against Schleicher County, being barred by the Statue of Limitation, being paid more than four years before suit was filed therefor.

"This 4th day of June, 1952.

"/s/ Louis B. Reed,
"Judge Presiding."

■ In order to legally justify rescission by the holder of vendor's lien on land, some part of the purchase money must be unpaid. When the purchase money is paid, the legal title vests in the vendee. Secrest v. Jones, 21 Tex. 121; Masterson v. Pullen, Tex.Civ.App., 207 S.W. 537; Mondragon v. Mondragon, 113 Tex. 404, 257 S.W. 215.

■ In substance the trial court found the price was fixed on an acreage basis. Through a mutual mistake Labors 22 and 24 each only contained about one-half of the 177.12 acres which each believed it did contain; that the payment of interest and deferred payment were provided for on the basis of 177.12 acres; that the price was fixed at $6.50 per acre on the supposition that each Labor contained 177.12 acres; that appellant had been paid excessive

interest in each case in excess of the amount of the principal debt and interest; that while plaintiff could not recover these excessive payments, the defendant having received every cent that was owing it could not rescind in order that it might collect money not owing. The evidence is ample to sustain the finding whether it be either express or implied that the purchase price was fixed on an acreage basis; that there was a mutual mistake as to the acreage conveyed; that there has been a full consideration to the extent of the deficiency in the acreage in the amount of $6.50 per acre.

■ In the court's opinion in the case of Mitchell v. Zimmerman, 4 Tex. 75, Judge Wheeler said:

"The demand of the vendor and the offer of the purchaser are supposed to be influenced in an equal degree by the quantity which both believed to be the subject of their bargain. The general rule, therefore, is that when a misrepresentation is made as to the quantity, though innocently, the right of the purchaser is to have what the vendor can convey, with an abatement out of the purchase money for so much as the quantity falls short of the representation."

It is realized here we deal with a mutual mistake, but the rule of the law must be the same in case of a mutual mistake. See Ray v. Barrington, Tex.Civ.App., 297 S.W. 781; Arrott v. Smith, Tex.Civ.App., 225 S.W.2d 639.

In the case of Copeland v. Gorman, 19 Tex. 253, it is said:

"It was no objection to the plea, that the alleged failure of title did not go to the whole, but only a part of the land conveyed. It was the right of the defendant to take what the vendor could convey, and have an abatement of the price to the extent of the failure of title. Mitchell v. Zimmerman, 4 Tex. 75. We are of the opinion that the plea was sufficient, and that the court erred in sustaining the exceptions."

Here we deal again with a misrepresentation, but where there is a mutual mistake there is no distinction as to the principle of law applicable.

■■ Where the sale is by the acre and there is a material shortage the vendee is entitled to recover for the shortage the price per acre. Brewer v. Ross, Tex.Civ. App., 290 S.W. 781 (wr. ref.); Denman v. Stuart, 142 Tex. 129, 176 S.W.2d 730. Where there is a material shortage in acreage and there is a mutual mistake and vendee has overpaid vendor, he is entitled to have such overpayment applied in abatement of the unpaid purchase money on the acreage actually conveyed. Franco-Texan Land Co. v. Simpson, 1 Tex.Civ. App. 600, 20 S.W. 953; Rosborough v. Picton, 34 Tex.Civ.App. 113, 34 S.W. 791.

■ The right of abatement of the purchase price is not barred by the statute of limitations, although the legal right to recover such overpayments might be barred by the four year statute of limitations. Rev.St.1925, art. 5527; 43 Tex.Jur. p. 441; Rosborough v. Picton, 34 Tex.Civ.App. 113, 34 S.W. 791, opinion by Judge F. A. Williams; Mason v. Peterson, Tex.Com.App., 250 S.W. 142; Murphy v. Boyt, Tex.Civ. App., 180 S.W.2d 199, loc. cit. 203(6).

Schleicher County in receiving title to this land and in applying same in accordance with the Constitution of the State, may be acting, or was acting, we think, in a governmental rather than a proprietory capacity. If such is the case it acted as an instrumentality of the State. However, when the State herself comes before her courts there is no good reason why the same law should not be applied as to a controversy between individual citizens. Neither the County nor the State has the legal or moral right to exact money from a citizen not justly due. The title was retained to secure the payment of the debt. The payment of the debt terminates the right of rescission. The equitable title of appellees is superior to that of appellant. See Secrest v. Jones, 21 Tex. 121; Mondragon v. Mondragon, 113 Tex. 404, 257 S.W. 215.

While it may be, as the trial court held, the recovery of these excess payments is barred by limitation, this does not prevent there being a bar to collection of the amount truly due twice. It is insisted here that appellee is entitled to collect for 177.12 acres when it only conveyed about half that acreage—the conveyance being by the acre beyond all question. This we believe, as the learned trial judge held, finds no justification in law or equity.

Careful consideration has been given to each and every point of error urged by appellant and same are overruled as presenting no reversible error. It is ordered that the judgment of the trial court be in all things affirmed.