**Julio C. MATHEUS, Appellant,**

v.

**Sandra Kay SASSER, Nancy Lanier Sands, Auckland Corporation, and Auckland, L.P. d/b/a Keller Williams Realty, Appellees.**

No. 2–03–222–CV.

Court of Appeals of Texas, Fort Worth.

April 21, 2005.

---

McCathern Mooty Buffington, LLP and Levi G. McCathern, II, Chad L. Farrar and Raymond J. Toucotte, Jr., Dallas, for Appellant.

Newsom, Terry & Newsom, LLP and J. Kent Newsom, Dallas, and Akin & Almanza and A. Boone Almanza, Austin, for Appellees.

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

ANNE GARDNER, Justice.

This is a deceptive trade practices case in which we must determine the proper measure of damages for a realtor's misrepresentation concerning the square footage of a house. The suit arose from a residential real estate purchase by Appellant Julio C. Matheus. Because the only complaints on appeal by Matheus relate to his claims against the two real estate agents who represented the seller, Nancy L. Sands and Sandra K. Sasser, and the agents' employer, Auckland L.P. d/b/a Keller Williams Realty, we will discuss only the facts and issues relevant to his complaints against those Appellees.[1] Because we hold that Matheus proffered no evidence of an appropriate measure of damages, we affirm the take-nothing judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Matheus was looking for a home for his family to live in while he built a house on a lot he had previously purchased. He testified that he only intended to live in the house for about a year and a half. He located a house for sale near his lot, engaged an agent, and made an initial offer of about $78 per square foot, based upon a Multiple Listing Service (MLS) listing sheet stating the house was offered at $359,000 with 4,218 "sq. ft. per tax". Sands and Sasser, agents for the seller,

---

[1]. The trial court granted a summary judgment in favor of Keller Williams Realty, Inc. as to all claims against it, and rendered a take-nothing judgment in favor of the seller of the property after trial. Appellant does not complain of the judgment in favor of those parties in this appeal.

admitted at trial that they had miscalculated the square footage of the house.

Sands and Sasser had obtained the number of square feet from the tax records, which showed square footage of the total living area and second floor space separately, and they had mistakenly added the two together. Both in the MLS sheet printed on Keller Williams letterhead and in a counteroffer letter to Matheus's agent, Sasser and Sands stated that the house had 4,218 square feet. In the letter, Sands stated that the price being asked by the seller of $82.13 per square foot was "very competitive and definitely a great purchase price."

Matheus testified that he relied on the representations of square footage in finally agreeing upon a price for the house of $343,225, which he calculated at $81.37 per square foot for 4,218 square feet. An appraisal performed at the request of his mortgage company to assure that the fair market value of the house met or exceeded the price revealed that the house had only 3,593 square feet. According to Matheus, he did not receive a copy of the appraisal until after he and his wife had signed the papers at closing. Upon learning that the house had less square footage than represented, Matheus offered to revoke the sale or to be credited a portion of the sales price for the difference in square footage, but the offer was refused.

Matheus sued Appellees and others under the DTPA for damages resulting from the misrepresentation concerning the house's square footage.[2] In a bench trial, Matheus asserted, and Appellees did not dispute, that the house actually contained only 3,593 square feet. Matheus testified the house he received was not the 4,218 square foot house he bargained for. Matheus testified that he prepared his offers and counteroffers "per square foot," that he bargained for a house that contained 4,218 square feet at a price of $81.37 per square foot, and that he received only 3,593 square feet. Matheus sought damages of $50,856.25 for the shortage of 625 square feet, calculated at $81.37 per square foot.

At the conclusion of Matheus's case, Appellees moved for judgment on the DTPA claim on the basis that Matheus had presented no evidence of the fair market value of the property, which they claimed was a necessary element for recovery under either the benefit-of-the-bargain or out-of-pocket measures of damages. After hearing arguments from both sides, the trial court granted the motion. Matheus contends that the trial court erred by granting the motion for judgment because the measure of damages he proposed was a proper measure of damages in a case of this nature, and that his testimony established his damages under that measure.

## STANDARD OF REVIEW

■ Appellees initially referred to their motion as a motion for judgment. Thereafter, and in their briefs to this court, the trial court and the parties sometimes characterize it as a motion for directed verdict. Because the case was tried to the trial court, the proper term is "motion for judgment." *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex. 1988); *Schwartz v. Pinnacle Communications*, 944 S.W.2d 427, 431 n. 1 (Tex.App.-Houston [14th Dist.] 1997, no pet.). This distinction is important because we review a judgment pursuant to a motion for judgment differently than a directed or instructed verdict. *Qantel*, 761 S.W.2d at 303–04. In entering judgment at the close

---

**2.** *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(5), (9) (Vernon Supp.2004–05), § 17.50 (Vernon 2002). Matheus also brought other causes of action, but they are not at issue in this appeal.

of a plaintiff's case, the trial judge, acting as trier of fact and law, is presumed to have ruled on both the legal and factual issues. *Id.* at 304; *Schwartz*, 944 S.W.2d at 431. The trial court in this case, however, made findings of fact and conclusions of law clearly indicating that she ruled against Matheus on the ground that he produced no evidence under the proper measure of damages. Therefore, we do not reach the issue of factual sufficiency of the evidence.

We review Matheus's complaint that the trial court erred in applying an improper measure of damages as a question of law subject to *de novo* review. *Alamo Cmty. Coll. Dist. v. Browning Const. Co.*, 131 S.W.3d 146, 161 (Tex.App.-San Antonio 2004, pet. filed); *Elias v. Mr. Yamaha, Inc.*, 33 S.W.3d 54, 60 (Tex.App.-El Paso 2000, no pet.). We review Matheus's complaint that the trial court erred in concluding that he produced no evidence under the proper measure of damages as we would a directed verdict. *See Qantel*, 761 S.W.2d at 303. In so doing, we must view the evidence in the light most favorable to Matheus as the party against whom the motion for judgment was granted and disregard all contrary inferences, to determine whether there is any probative evidence raising a material fact issue. *Id.*; *White v. S.W. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983).

## PROPER MEASURE OF DAMAGES

In response to Matheus's argument that his damages are appropriately measured by the number of square feet by which the property was short times the price he paid per square foot, Appellees argue that there are only two measures of damages for misrepresentation, "benefit of bargain" and "out of pocket," and that Matheus's testimony based solely on those calculations is no evidence under either measure of damages. Although we agree that Matheus's evidence does not satisfy either of those measures of damages, we disagree that those are the only measures of damages available for misrepresentation under the DTPA.

The applicable version of the DTPA provides that a consumer may recover "economic damages," defined as "compensatory damages for pecuniary loss, including costs of repair or replacement." Tex. Bus. & Com.Code Ann. §§ 17.45(11), 17.50(b)(1) (Vernon 2002). We have found no case suggesting that the term "economic damages" carries any different meaning than "actual damages" as allowed under the prior version of the DTPA.[3] Therefore, we may appropriately apply the case law decided under the prior and current versions of the Act. Actual damages for misrepresentation under the DTPA are those recoverable at common law. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (citing *Brown v. American Transfer*

---

3. In 1995, the legislature amended section 17.50(b)(1) to permit recovery of "economic damages" instead of "actual damages." Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1490, 1491, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex. Gen. Laws 2988, 2992 (current version at Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 2002)). After the amendment, appellate courts have used the terms "actual damages" and "economic damages" interchangeably and cited as authority Texas Supreme Court cases applying the statute prior to the amendment. *See Ford Motor Co. v. Cooper*, 125 S.W.3d 794, 798–99 (Tex. App.-Texarkana 2004, no pet.) (citing *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex.1988) and *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984)); *Valley Nissan, Inc. v. Davila*, 133 S.W.3d 702, 713 (Tex.App.-Corpus Christi 2003, no pet.) (citing *Farrell v. Hunt*, 714 S.W.2d 298, 300 (Tex.1986)).

& Storage Co., 601 S.W.2d 931, 939 (Tex.), cert. denied, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980)). At common law, actual damages are either "direct" or "consequential." Id. (citing Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 163 (Tex. 1992) (Phillips, C.J., concurring)).

▪ Direct damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong. Arthur Andersen, 945 S.W.2d at 816. Direct damages are those that are conclusively presumed to have been foreseen or contemplated by the party as the result of his wrongful act. Henry S. Miller Co., 836 S.W.2d at 163. Consequential damages, on the other hand, are those that result naturally, but not necessarily, from the acts complained of. Id. at 163 (citing DAN B. DOBBS, THE LAW OF REMEDIES § 9.2 (1973)). Under the DTPA, consequential damages need not be the usual result of the wrong but must be directly traceable to the wrongful act and result from it. Arthur Andersen, 945 S.W.2d at 816; see also Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 181–82 (Tex.1995) (holding there must be evidence of a direct causal link between damages awarded, actions of defendant, and injury suffered to recover consequential damages for false, misleading, and deceptive actions under the DTPA).

▪ For misrepresentation, there are two recognized measures of direct damages: the out-of-pocket measure or the benefit-of-the-bargain measure, whichever gives the plaintiff the greater recovery. Arthur Andersen, 945 S.W.2d at 817; Leyendecker, 683 S.W.2d at 373; Ford Motor Co., 125 S.W.3d at 798. Out-of-pocket damages, based upon a restitutionary theory, measure the difference between the value the buyer has paid and the value of what he has received. Arthur Andersen, 945 S.W.2d at 817; W.O. Bankston Nis-

san, 754 S.W.2d at 128; Ford Motor Co., 125 S.W.3d at 798. Benefit-of-the-bargain damages, under an expectancy theory, measure the difference between the value as represented and the value as received. Arthur Andersen, 945 S.W.2d at 817; W.O. Bankston Nissan, 754 S.W.2d at 128; Ford Motor Co., 125 S.W.3d at 798.

▪ The DTPA allows the consumer to recover either the out-of-pocket measure or the benefit-of-the bargain measure, whichever is greater. W.O. Bankston Nissan, 754 S.W.2d at 128. But contrary to Appellees' argument, such direct damages are not exclusive under the DTPA. See, e.g., Henry S. Miller Co., 836 S.W.2d at 162 (explicitly stating "such direct measures ... are not exclusive") (emphasis added). Other damages may be allowed to ensure that the plaintiff is made whole. Id.; Norwest Mortgage, Inc. v. Salinas, 999 S.W.2d 846, 863 (Tex.App.-Corpus Christi 1999, pet. denied). In Perry Homes v. Alwattari, we expressly recognized that "[o]ut-of-pocket loss and benefit-of-the-bargain are not the exclusive measures of recoverable damages under the DTPA." 33 S.W.3d 376, 386 (Tex.App.-Fort Worth 2000, pet. denied).

▪ Actual damages under the DTPA have been defined as "the total loss sustained [by the consumer] as the result of the deceptive trade practice." Henry S. Miller Co., 836 S.W.2d at 162 (citing Kish v. Van Note, 692 S.W.2d 463, 466 (Tex. 1985); Smith v. Baldwin, 611 S.W.2d 611, 617 (Tex.1980)) (alteration in original). Consequential damages have been allowed in DTPA cases for a variety of losses. See Henry S. Miller Co., 836 S.W.2d at 163 (loss of capital improvements); Kish, 692 S.W.2d at 468 (related and reasonable necessary expenses); White, 651 S.W.2d at 263 (loss of profits); Kold–Serve Corp. v. Ward, 736 S.W.2d 750, 755 (Tex.App.-Cor-

pus Christi 1987) (interest on indebtedness), *writ dism'd,* 748 S.W.2d 227 (Tex. 1988); *Village Mobile Homes, Inc. v. Porter,* 716 S.W.2d 543, 550 (Tex.App.-Austin 1986, writ ref'd n.r.e.) (loss of improvements). Although the foreseeability requirement for consequential damages does not apply under the DTPA, such additional damages must be proved with reasonable certainty and are not recoverable if they are too remote, too uncertain, or purely conjectural. *Arthur Andersen,* 945 S.W.2d at 816. Consequential damages must be specially pled. *Henry S. Miller Co.,* 836 S.W.2d at 164.

Matheus did not plead nor does he argue consequential damages but, rather, that damages based on a price per square foot basis are appropriate under the benefit-of-the-bargain measure. Under his calculations, he is entitled to damages measured by multiplying the difference between the number of square feet represented from that actually received (4,218–3,593 = 625) by the price per square foot he paid for the house as represented ($342,225/4,218 = $81.37), for a total of $50,856.25. Matheus relies upon *George D. Thomas Builder Inc. v. Timmons,* a case involving similar facts from the El Paso Court of Appeals, which approved the method of calculating damages that Matheus proposed in the trial court. 658 S.W.2d 194, 197 (Tex.App.-El Paso 1983, writ ref'd n.r.e.).

In that case, the Timmonses purchased a home for $30,000. *Id.* at 195. They claimed that their real estate agent "represented to them that the home had 1,420 square feet of improved living space," and that they relied on that representation when agreeing on the purchase price. *Id.* When they subsequently decided to sell the home, it was determined that it actually had only 1,286 square feet of living space. *Id.* The Timmonses sued the real estate agent for violations of the DTPA. *Id.* At trial, the jury found that the representations as to square footage were "material" and found "that $3,000.00 would fairly and reasonably compensate the Plaintiffs for their actual damages." *Id.* On appeal, the real estate agent challenged the legal and factual sufficiency of the evidence supporting the jury's finding of damages. *Id.* at 197.

Based on an examination of the evidence, the court of appeals determined that it was apparent that the jury "calculated damages by using the difference in actual square footage in the home and the square footage represented." *Id.* The *Timmons* court determined that "the cost of the house per square foot as represented would be $22.33, and the square footage deficiency would be 134 square feet. Multiplying the two, damages would be $2,992.22." *Id.* The court held, "This is a permissible measure of damages in a case of this nature." *Id.*

We are not persuaded that *Timmons* applies to the facts in this case. First, the jury question on damages was submitted generally in that case with no instruction as to the measure of damages, nor did the court of appeals characterize the damages as based upon any particular, common-law measure. The court was only able to ascertain how the jury calculated the damages through backing into the amount through mathematical calculations based on the evidence as to square feet and price, "without knowing exactly how the jury arrived at its figure." *Id.* Without a discussion detailing the evidence or case law relied upon by the court, we are left to speculate as to whether the court considered the measure of damages allowed as benefit-of-the-bargain, return of out-of-pocket loss, or consequential damages.

Second, the statement of the court of appeals in *Timmons* that the measure of

damages used was "permissible" is dicta since it does not appear that the correctness of the measure of damages was at issue. The opinion states only that the appellant challenged the legal and factual sufficiency of evidence to support the damages awarded. *Id.* Third, a significant distinction between this case and *Timmons* is that the purchaser contended in *Timmons* that the property's value was "significantly lowered" by the discrepancy in square footage. *Id.* at 195. Calculating damages by the difference between the price per square foot as represented times the number of feet by which the property received is deficient might be appropriate where reimbursing the purchaser based on the price paid per square foot of the deficiency is needed to make the purchaser whole.[4] In contrast to the purchaser in *Timmons*, Matheus has never contended that his property's value was lowered by the deficiency in the square footage.

Indeed, Matheus admitted on cross-examination that, although he did not actually see the appraisal until after closing, he knew that the house appraised for *more than* what he was paying before closing. The appraisal, admitted into evidence without objection, placed a fair market value on the property of $347,000.00 at the time of closing, at the lesser but correct number of 3595 square feet. Thus, Matheus received property with a *greater* value than he bargained for even though it contained fewer square feet. Multiplying the price paid per square foot as represented by the number of square feet of the deficiency is not necessary to make Matheus whole. Instead, it would overcompensate him.

We, along with the *Timmons* court, note that the measure of damages sought to be invoked here has been used previously. In

*Cameron v. Terrell & Garrett, Inc.*, the Texas Supreme Court ascertained from the record that the jury in that case likewise calculated damages "by multiplying the cost of the house per square foot as represented ... times the square footage deficiency." 618 S.W.2d 535, 538 n. 4 (Tex. 1981). The jury question there, as in *Timmons*, did not contain an instruction on a measure of damages. *Id.* The supreme court did not address whether the measure of damages used by the jury was proper, holding that Terrell & Garrett, Inc. waived error by failing to object to the evidence and failing to request an instruction on the proper measure of damages. *Id.* Generally, damages calculated as Matheus proposes have only been allowed where a sale of real estate is on an agreed "per unit" basis. *See Denman v. Stuart*, 142 Tex. 129, 132–33, 176 S.W.2d 730, 732 (1944) (holding value per acre negotiated by parties for sale of tract applied to determine damages for shortage); *Schleicher County v. Hudgens*, 255 S.W.2d 927, 932 (Tex.Civ. App.-El Paso 1952, no writ) (holding vendee entitled to recover price per acre for shortage in realty sold by the acre); *Moss–Tate Inv. Co. v. Owens*, 22 S.W.2d 1096, 1098 (Tex.Civ.App.-Dallas 1929, writ ref'd) (allowing recovery at agreed price per foot for shortage in lot of 63.6 feet); *see generally*, Annotation, *Measure and Elements of Damages Recoverable from Vendor Where There Has Been Mistake as to Amount of Land Conveyed*, 94 A.L.R.3d 1091 (1979).

There was evidence that Matheus calculated the lump sum offers and counteroffers, as well as agreeing to the final price for the property on a per square foot basis of living space of the house for negotiation and comparison purposes with other prop-

---

4. On its face, this is a rescissionary measure, i.e., an out-of-pocket measure of damages: reimbursement for the difference between the *price paid* and the value of the property received, rather than the benefit-of-the bargain measure.

erties. But the MLS sheet, in listing the price and description of the property, reveals a listing price of a lump sum figure, with the square feet stated as a descriptive reference. Matheus points to Sasser and Sands's letter to Matheus's agent stating that "[a]t the sales price of $346,450 it's priced at $82.13 per square foot, which make[s] this property very competitive and definitely a great purchase price." The letter further indicates that other houses on the market in the subdivision were priced at "an average of $95.98 per square foot" and other "comparable properties" were priced at "an average of $94.50 a square foot." While the letter was evidence that the price per square foot was a negotiating factor in calculating the final price agreed upon between the parties, this does not equate to evidence that the sale of the house was a negotiated agreement for a sale based on a per square foot unit. The evidence of the agents was undisputed that they were never aware that Matheus was attempting to negotiate a sale on a per square foot basis. And Matheus has pointed to no evidence that the final negotiated price was agreed upon per square foot, that is, per "unit" as compared with a sale in "gross" so as to entitle him to measure the damages in the manner he seeks. We overrule Matheus's first issue and hold that the trial court did not err in granting the motion for judgment because Matheus's proposed measure of damages was not proper under the circumstances of this case.

## EVIDENCE OF DAMAGES UNDER PROPER MEASURE

Matheus nevertheless contends that he produced legally sufficient evidence of damages under the benefit-of-the-bargain measure of direct damages. Initially, we disagree with Appellees' argument that Matheus failed to offer any evidence of the fair market value of the property as represented. After negotiating, the parties settled on a sales price of $343,225. Matheus testified that the final sales price agreed upon reflects a price of $81.37 per square foot for a house represented to contain 4,218 square feet. The price agreed on between two parties is some evidence to support a fact finding on fair market value of property *as represented* in an action under the DTPA. *Ford Motor Co.,* 125 S.W.3d at 799 (holding parties' negotiated price of vehicle was evidence of market value as represented); *Barraza v. Koliba,* 933 S.W.2d 164, 169 (Tex.App.-San Antonio 1996, writ denied) (op. on reh'g) (holding evidence of amount paid for property thought to include mineral rights was more than a scintilla to support market value of land as represented). The price agreed on by the parties is evidence of the property's fair market value as represented, at a time when Matheus believed the house contained 4,218 square feet.

Under either the benefit-of-the-bargain or the out-of-pocket measure of damages, the plaintiff is also required to prove the fair market value of the item *as received.* *W.O. Bankston Nissan,* 754 S.W.2d at 128; *Jabri v. Alsayyed,* 145 S.W.3d 660, 667 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *see Ford Motor Co.,* 125 S.W.3d at 799, 803 (holding recovery precluded absent evidence of market value of vehicle when received); *Barraza,* 933 S.W.2d at 170 (holding evidence legally insufficient to establish "other leg of damages model" absent evidence of market value of land without minerals on date of sale).

A property owner may testify as to fair market value of his property, but only if his testimony reveals that he is familiar with the market value and only if his assessment is based on market value rather than intrinsic value of the property

to him. *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996); *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984); *Jabri,* 145 S.W.3d at 667; *Ford Motor Co.,* 125 S.W.3d at 799; *Barraza,* 933 S.W.2d at 169. Fair market value is the price property would bring when offered for sale by one who desires, but is not obligated, to sell, and is bought by one who is under no obligation to buy. *Jabri,* 145 S.W.3d at 667; *Nelson v. Najm,* 127 S.W.3d 170, 177 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Intrinsic value, in contrast, is an inherent value not established by market forces, but based upon sentimental or personal value. *Ford Motor Co.,* 125 S.W.3d at 799.

The only evidence as to the fair market value of the house as received with the 625 square foot shortage was the appraisal that reflected a value greater than the value represented. Matheus offered no expert testimony that the fair market value of the house with the shortage was less than the value as represented to him. Matheus, himself, testified only as to the amount he proposed to "make things right" by his own calculations based on the price he paid per square foot times the missing 625 square feet. According to Matheus, the square footage was important to him in purchasing the house because he wanted to be close to the house he planned to build, and that he wanted to sell it for at least what he put into it after making planned changes to the inside.

Matheus's testimony affirmatively reflected that he was referring to the intrinsic value of the property to him for his personal purposes, rather than the fair market value. As such, his testimony was irrelevant to the proper measure of damages either based on benefit-of-the-bargain or out-of-pocket loss, and constituted no evidence of the market value of the property as received. *Porras,* 675 S.W.2d at

505 (holding testimony of owner referring to personal rather than market value irrelevant and no evidence, even absent objection); *Ford Motor Co.,* 125 S.W.3d at 803 (holding owner's opinion that vehicle's value was "worthless" as "unsafe for what I want it for" affirmatively showed opinion based on personal value to him and constituted no evidence); *Pontiac v. Elliott,* 775 S.W.2d 395, 398–99 (Tex.App.-Houston [1st Dist.] 1989, writ denied) (holding owner's testimony as to auto's value as "nothing" as she could not depend on it or sell it referred to intrinsic value of vehicle to her and constituted no evidence).

Additionally, we note that the supreme court in *Cameron* seemed to express doubt as to the propriety of the jury's manner of calculating the damages per square foot, in noting that the jury's figures included the value of the land in evaluating the damages for deficiency in the square footage of the house. 618 S.W.2d at 538 n. 4. Similarly, the price agreed to by the parties in this case for the house also included the land. Matheus received the land as bargained for, along with the house, for the price he paid, but he produced no evidence of the price per square foot for the house, apart from the price for the entire lot and house together. *See Leyendecker,* 683 S.W.2d at 373 (holding buyer not entitled to out-of-pocket measure of damages based on deficiency in square footage of house absent evidence or finding as to the price paid for missing square footage as distinct from price of entire lot and improvements).

There was no competent evidence to support the damages sought by Matheus under either the benefit-of-the bargain or out-of-pocket measure of damages. Consequently, we overrule Matheus's second issue and hold that the trial court did not err in granting Appellees' motion for judgment.

## CONCLUSION

Having overruled both of Appellant Matheus's issues, we affirm the trial court's take-nothing judgment against Appellant and in favor of Appellees Sasser, Sands, and Auckland.