Opinion filed December 14, 2023



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00104-CV

_____

## KAY TALLEY AND ED TALLEY, Appellants

## V.

## ROCKY CREEK CEMETERY ASSOCIATION, ITS GENERAL MANAGER, LEWIS LEHMAN, THE ROCKY CREEK PERPETUAL CARE CEMETERY ASSOCIATION, AND JOSE LUIS ESTRADA, Appellees

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV1809404**

### M E M O R A N D U M   O P I N I O N

This case relates to a claim of grave plot encroachment, where the headstone of the deceased wife of Appellee Jose Estrada allegedly encroaches upon another burial plot, that of the deceased parents of Appellant Kay Talley. Kay Ward Talley and Guy Edward "Ed" Talley, Appellants, appeal the judgment of the trial court that

dismissed all of their claims against Rocky Creek Cemetery Association, Lewis Lehman, and the Rocky Creek Perpetual Care Cemetery Association (collectively the "Rocky Creek Defendants" or "Rocky Creek Appellees"), and Jose Luis Estrada.[1]  Appellants argue on appeal that the trial court erred in granting judgment in favor of Appellee Estrada because fact issues exist.  Appellants also argue that there were four erroneous legal conclusions made by the trial court concerning elements of trespass as to all Appellees.  We affirm the judgment of the trial court.

*Factual and Procedural History*

On September 28, 2018, Appellants filed a petition alleging that the placement of Appellee Estrada's wife's headstone was encroaching on the plot where H.B. Ward, Kay's father, is buried.  Ed testified that he was informed by a cemetery representative (Lehman) that the plots were all approximately five feet by ten feet; however, when Ed measured from the back of H.B. Ward's headstone to the back of the Estrada headstone, it was eight feet, three inches on one corner and eight feet, four inches on the other.  A depiction of the plots at issue is below:[2]

---

[1]The claims against the remaining defendant, Rocky Creek Baptist Church, were previously settled and dismissed before the trial court entered the final judgment.  Appellants do not appeal the dismissal of its claims against Rocky Creek Baptist Church.

[2]This diagram is used for illustrative purposes only and was originally part of Plaintiff's Exhibit No. 25.  It is not to scale, and we only include the diagram to demonstrate how the plots at issue in this appeal are geographically related to one another. All headstones appear—from other exhibits—to be located on the western side of the plots and facing east.

2



H.B. and Lois Ward, Kay's parents, purchased two cemetery plots in Rocky Creek Cemetery in 1992 (plots 512 and 513, respectively). The plots were purchased before Lehman became the cemetery association representative in 1994. H.B. passed away in 1996 and Lois passed away in 2010. H.B. and Lois are honored with the placement of a large joint headstone. Ed testified that the two plots where H.B. and Lois are buried were marked at the corners with square (six inch by six inch) "W" markers, and that, at the foot of H.B.'s grave, there is also a military service placard. Ed indicated that the markers were placed by someone in the family after H.B. was buried and that he discovered that it appeared that the markers had been moved after the large, combined headstone was placed to honor the Estrada couple. Kay similarly testified that she also noticed that the markers had been moved in September 2016—even though she had not measured her father's plot and placement of the markers before the Estrada joint headstone was placed. Ultimately, Appellants did not identify who placed the corner markers, nor exactly when or where the markers were originally placed.

Appellee Estrada purchased the two cemetery plots (plots 584 and 585) east of the Ward plots after his wife died on August 25, 2015. The Estrada adjoining

plots are bordered on their east side (at the deceased's feet) by Keller Drive, an unpaved road. In 2016, after Appellants discovered that the two plots east of Kay's parents had been purchased, they purchased the two plots north (plots 586 and 587) of the Estrada plots. During the bench trial, Kay testified that the only "trespass" was upon the *surface* of her father's plot (plot 512), that his body had not been disturbed, and that Appellee Estrada's wife was buried in the proper burial plot (though the headstone was encroaching).

The trial court heard testimony about the layout of the cemetery. The headstones did not all appear to be precisely "in line" with one another, and Ed admitted that he only assumed that H.B. and Lois' double headstone was placed at the west most boundary of their plot. Kay's sister Vera was buried directly north of—next to—their mother Lois (plot 514). One of the plots purchased by the Appellants in 2016 was directly east of Vera's plot—next to the Estrada plots—and Appellants buried their nephew, Vera's son, there (plot 586). The distance between Appellants' nephew's headstone and the back of Vera's headstone was measured to be eight feet, eight inches, and Ed explained that he did that because the [unpaved] road bordering the foot of the plot (Keller Drive) was "too close."

Ed testified that the alleged encroachment on H.B. Ward's grave by the Estrada headstone was causing great emotional distress to his wife. Additionally, Appellants claimed at trial that the Rocky Creek Defendants committed fraud in two ways: first, in allegedly allowing the Estradas to move the corner markers and military markers from H.B. Ward's plot, and second, in representing the approximate size of the plots to be five feet by ten feet, yet the distance between headstones amounted to less than ten feet.

4

After Plaintiffs' case in chief, both Defendants made a motion for judgment.[3] The trial court granted judgment in favor of Appellee Estrada as to the trespass claim, granted judgment in favor of Defendant Lehman as to the fraud claim, and denied the motion as to the Rocky Creek Defendants as to the claims for trespass. Following closing arguments, the trial court found that the Plaintiffs did not prove, by clear and convincing evidence, their claims for fraud or gross negligence. Plaintiffs appealed. On appeal, Appellants only challenge the decision of the trial court as to trespass and do not appeal the judgment as to their fraud or gross negligence claims. Because our analysis on Appellants' second issue substantially affects our analysis of their first issue, we first address the specific trial court findings of facts and conclusions Appellants complain of, then we discuss Appellants' first issue regarding the grant of Appellee Estrada's motion for judgment.

### Issue Two: Appellants Contest the Sufficiency of the Evidence Supporting Conclusions of Law

A. *Standard of Review*

The trial court's findings of fact following a bench trial have the same weight as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). An appellate court will review the trial court's findings for legal and factual sufficiency of the evidence under the same standards as are applied to review of jury verdicts. *Id.*

As the plaintiffs, Appellants had the burden of proof to establish their claim of trespass by competent evidence. *See Mobile, Inc. v. Cone*, 457 S.W.2d 175, 176

---

[3]Appellees both moved for directed verdicts, but a motion for directed verdict applies to jury trials. Instead, when a party moves for a "directed verdict" in a bench trial, it is construed as a motion for judgment. *See Matheus v. Sasser*, 164 S.W.3d 453, 457 (Tex. App.—Fort Worth 2005, no pet.); *see also Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 422 n.4 (Tex. 1993) (Gonzalez, J., concurring) ("Technically, the use of the term 'directed verdict' in a bench trial is incorrect because there is no jury to direct. In this situation, the correct procedure is for the defendant, at the close of the plaintiff's evidence, to make a 'motion for judgment.'"). Therefore, even though denominated otherwise by the parties, as to this bench trial, we construe each motion as a motion for judgment and apply applicable law as such.

(Tex. App.—Tyler 1970, writ ref'd n.r.e.). When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which he had the burden of proof, he must show that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party attacks the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242.

We defer to unchallenged findings of fact that are supported by some evidence, but the trial court has no discretion to determine what the law is or in applying it to the facts. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014). As such, we review the trial court's conclusions of law de novo. *Id.*; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We will uphold the trial court's judgment, even if we determine a conclusion of law is erroneous, so long as the judgment may be sustained on any legal theory supported by the evidence. *Marchand*, 83 S.W.3d at 794.

B. *The Four Contested Conclusions of Law*

Appellants claim that four of the trial court's conclusions of law—all related to the trespass claim—were not supported by the evidence, which resulted in an improper judgment.[4] The conclusions of law at issue are in the following four paragraphs:

---

[4]Since Appellants had the burden of proof on their trespass claim, their contention that the trial court's findings were not supported by the evidence is technically inappropriate. *See Middleton v. Palmer*, 601 S.W.2d 759, 765 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (citing *Keystone-Fleming Transports, Inc. v. City of Tahoka*, 315 S.W.2d 656 (Tex. App.—Amarillo 1958, writ ref'd n.r.e.)). However, we may review their evidentiary complaints to determine if the findings are manifestly unjust. *Id.* (citing *In re Kings Estate*, 244 S.W.2d 660 (Tex. 1951)).

9. The Plaintiffs failed to meet any of these requirements. Although the evidence showed that Kay Talley was a beneficiary of the Decedents' estate, the Plaintiffs did not have a lawful right of possession in the burial lots. The evidence presented showed that the burial plots were not sold be [sic] deed of [sic] other similar conveyance that would convey a fee simple estate, but rather were a mere right to be buried in the cemetery at the given location. This right to be buried in the lot belonged to the Decedents, not to the Plaintiffs Ed and Kay Talley. If the Decedents had not been buried there, then perhaps [the] right to be buried in the burial plots could have been bequeathed to the Plaintiffs. But the Decedents were buried there, and thus, the right of occupancy belonged to the Decedents alone.

10. More importantly, however, the Plaintiffs failed to show any encroachment upon the Decedents' burial plot. Again, the pictures admitted into evidence showed the tombstones at the cemetery were not all in a straight line. In fact, there were substantial deviations, even on the row where the Decedents' [sic] were buried. Plaintiffs admitted that it could not verify the boundaries of the Decedent's burial plot by any means other than the placement of the Decedents' tombstone, but admitted that they did not know who set the tombstone or how the boundaries would have been determined at that time. The Court did not find this testimony credible to establish the boundaries of the burial plots, particularly not with the type of certainty that would be required for the Court to find an encroachment of a mere 20 inches.

11. Even if there had been evidence of an encroachment, there was no evidence presented as to who placed the tombstone in question. This omission precludes any finding of a trespass, particularly with regard to Defendant Lewis Lehman and the cemetery association defendants who were not shown to have any connection to the placement of the allegedly offending tombstone. Finding otherwise, would make the cemetery association strictly liable for the placement of every tombstone

7

in the cemetery, and the court finds no law to support this contention.

12. In fact, while there was no direct evidence that Defendant Lewis Lehman or the cemetery association defendants were responsible for the placement of the headstone in question, there was evidence to the contrary. When placing other tombstones within the cemetery, the Plaintiffs inquired of the cemetery association's president and ask [sic] whether a representative needed to be present. They were then told that if they knew where the burial plot was located, there was no need for a cemetery association representative to be present or to assist. The court found this as credible evidence that the cemetery association did not undertake to determine where tombstones were to be placed.

Appellants do not challenge any of the trial court's findings of fact in paragraphs one through seven, nor do Appellants challenge the conclusions of law related to the alleged fraud and gross negligence claims.

We review the challenges to the trial court's conclusions of law in paragraphs nine through twelve de novo. *See Tenaska Energy*, 437 S.W.3d at 523. To recover on a claim for trespass to real property, the plaintiff has the burden to prove that "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied).

C. *Analysis*

1. *Cemeteries and Crematories: Chapter 711 of the Texas Health and Safety Code*

Cemeteries and crematories are governed by Chapter 711 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 711.001, .038, .039 (West 2017 & West Supp. 2023). "A cemetery organization may sell and convey the exclusive right of sepulture in a plot." *Id.* § 711.038(a); *see Sepulture*, MERRIAM-

8

WEBSTER'S DICTIONARY (11th ed. 2020) (a "sepulture" is a burial). A "plot" is a space in a cemetery that is "used or intended to be used for interment," and a "plot owner" is a person with the "exclusive right of sepulture," or the exclusive right of burial. HEALTH & SAFETY §§ 711.001(31), (32). The right of interment under the code is the "right to inter the remains of one decedent in a plot." *Id.* § 711.001(22). The right of interment in a plot is the exclusive right of the person named as grantee in the certificate of ownership or other instrument of conveyance. *Id.* § 711.039(a). This exclusive right of sepulture in an unused grave may be conveyed only by express reference to the plot in the owner's will or by written declaration of the plot owner filed and recorded with the cemetery organization or by a surviving spouse or heirs-at-law of the owner. *Id.* § 711.039(g). If a deceased plot owner—who has the exclusive right of sepulture—is not interred in the plot, and has not made specific disposition of the plot, the exclusive right of sepulture may vest on the death of the owner in the owner's heirs-at-law. *Id.* § 711.039(h).

## 2. *Trial Court's Conclusions of Law - Paragraph 9*

Appellants argue that Paragraph 9 of the trial court's conclusions of law is not supported by law. In Paragraph 9, the trial court concluded that Kay's mother possessed the exclusive right of sepulture, she was buried in her plot, and did not have ownership in fee simple of the plot; thus, Kay, even as a beneficiary of her mother's will, did not have any right to the plot. Appellants claim that the plots owned by Kay's parents were community property, and therefore, were conveyed to Kay through her mother's will. Appellants rely on the decision in *Calhoun v. Calhoun*, where the court determined that—in the absence of any certificate of ownership—two burial plots were presumed to be community property according to Section 3.003(a) of the Texas Family Code. *Calhoun v. Calhoun*, No. 12-17-00032-CV, 2017 WL 4801042, at *2 (Tex. App.—Tyler Oct. 25, 2017, no pet.) (mem. op.).

9

*Calhoun* differs from this case in at least one obvious and significant way: there is nothing in *Calhoun* that shows that anyone had been interred in either of the burial plots purchased by the ex-wife. *Id.* According to the Texas Health and Safety Code, once a person has been interred in a plot where they have the exclusive right of sepulture, the certificate of ownership has been fulfilled and that exclusive right may not be bequeathed to another. *See* HEALTH & SAFETY §§ 711.001, .038, .039. Here, Kay's parents were each interred in the plots they had exclusive right of sepulture for. Because that right was fulfilled, there was nothing to "pass" to Kay in her mother's will following her death.

The will was also silent as to the plots, with no express statement bequeathing any cemetery plot to Kay. *See* HEALTH & SAFETY §§ 711.039(g), (h). Further, even if we assumed, which we do not, that Kay's mother's will conveyed the exclusive right of sepulture in her own plot, she could not have conveyed the exclusive right of sepulture for the second plot, as her husband, H.B. Ward was buried there following his death in 1996, more than fourteen years before Lois Ward's will was probated. As the plot at issue in this case is H.B. Ward's, not Lois's, the finding of fact supporting the trial court's conclusion in Paragraph 9 is not against the great weight and preponderance of the evidence.

### 3. *Trial Court's Conclusions of Law- Paragraph 10*

Appellants also argue that the trial court's conclusion in Paragraph 10 is not supported by law. The trial court, in Paragraph 10, concluded that Appellants failed to show any encroachment on the Decedents' burial plot because, among other reasons, the testimony indicated that the Plaintiffs did not know the exact boundaries of that plot. Appellants—without any reference to legal authority—claim that because Ed measured from the back of the Ward's headstone to the back of the Estrada's headstone and found the distance to be less than ten feet, there was encroachment upon their designated plot. Importantly, Appellant has not challenged

*any* findings of fact made by the trial court, specifically Paragraphs 6 and 7, in which the trial court found that there was no evidence of any survey or permanent markers to determine the rows in the cemetery, nor was there any evidence presented to support that the Ward headstone was placed precisely on the "boundary" of the Ward plots. The testimony was that Ed "assumes" that the Ward headstone was placed on the boundary of their plots, but that he was not present for the placement of the headstone, and he has no evidence to support this assumption. Appellant presented no legal support on appeal that encroachment can occur where there is no determination of what property is owned. Trespass requires such a determination. *See Wilen*, 191 S.W.3d at 798 (plaintiff must show that they own or have the lawful right to possess the real property at issue).

The sale of a cemetery plot only carries with it the exclusive right of *burial* and does not result in a fee simple ownership of the plot that may be passed on to future generations if the holder of the right is in fact interred in the plot. *See* HEALTH & SAFETY §§ 711.039(a), (g), (h). We decline to expand such rights beyond what the legislature has allowed for the purpose of this case—particularly when the evidence does not conclusively support that anyone involved has documentary evidence and/or personal knowledge regarding the bounds of any of the plots at issue. Appellants also claim that because there were corner markers on the Wards' plots for almost thirty years, the boundary had been clearly established. However, Appellants supply no legal principle to support this assertion, and the argument is predicated on Appellants' flawed belief that H.B. and Lois Ward owned their cemetery plots in fee simple and had an interest above and beyond the exclusive right of sepulture. We conclude that the evidence is sufficient to support the trial court's conclusion in Paragraph 10.

#### 4. *Trial Court's Conclusions of Law - Paragraphs 11 and 12*

Appellants further argue that Paragraphs 11 and 12 are not supported by law. In Paragraphs 11 and 12, the trial court concluded that there was no credible evidence presented that the Rocky Creek Defendants had any connection to the marking and placement of the Estrada headstone, thereby precluding any finding of trespass against these defendants. On appeal, Appellants raise a series of rhetorical questions, again without legal support, asking who would be responsible if the placement of headstones was not the responsibility of the cemetery association or Lehman.

Although there was testimony that the cemetery association would mark a gravesite or plot, there were no details presented regarding the marking of and determination of headstone location or how that conferred any right other than as provided by Chapter 711. There was, however, testimony from Ed that *he* made the determination about where his nephew's headstone was set, and that it was *not* made by someone involved with or related to the association. Appellants did not present any evidence that it was the practice of the cemetery association or that they had a duty to mark and oversee the placement of headstones, even if the cemetery association had marked the grave locations.

Furthermore, even if there was a duty on the part of Lehman or the cemetery association to mark placement of headstones, because we determined the legal conclusion in Paragraph 10 was correct—and there is no evidence of encroachment or trespass—we need not determine if Lehman or the association were the parties responsible for marking where the Estrada headstone was placed. TEX. R. APP. P. 47.1 Therefore, even if the conclusions in Paragraphs 11 and 12 were erroneous, which we conclude they are not, and the Rocky Creek Defendants were responsible for the placement of the Estrada headstone, there is nothing in the record to support the argument by Appellants that the placement of the Estrada headstone

12

was a legal trespass on H.B. Ward's plot. In addition, the trial court's conclusions in Paragraphs 11 and 12 do not upset the conclusion of the trial court that there was no evidence of trespass on the part of the Rocky Creek Defendants.

Accordingly, we overrule Appellants' second issue.

*Issue One: Appellee Estrada's Motion for Judgment*

As we have stated, Appellee Estrada's motion for directed verdict is, in fact, a motion for judgment and we review it as such. *See Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex. 1988); *Matheus*, 164 S.W.3d at 457. "Thus, the court's factual rulings will stand unless there is legally or factually insufficient evidence to support them." *Hatch v. Williams*, 110 S.W.3d 516, 521 (Tex. App.—Waco 2003, no pet.); *see Qantel*, 761 S.W.2d at 304. We view the evidence in the light most favorable to Appellants as the party against whom the motion for judgment was granted—disregarding all contrary inferences—to determine whether there is any probative evidence raising a material fact issue. *Matheus*, 164 S.W.3d at 458 (citing *Qantel*, 761 S.W.2d at 303; *White v. S.W. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983)).

The pivotal issue before the trial court in Appellee Estrada's motion for judgment was whether the Estrada headstone placement constitutes trespass on the grave of H.B. Ward. Appellant was required to prove that "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Wilen*, 191 S.W.3d at 798. The trial court as the factfinder determined that there was "zero evidence" that Appellee Estrada "caused himself or a person or a thing to enter or remain on or in the property of another." This determination encompasses the first and second required elements of trespass and was fatal to Appellants' claim.

13

Appellants argued to the trial court that *because* there was no evidence that Appellee Estrada exercised due diligence to ensure that his wife's headstone would not be trespassing, his inaction and failure to rebut by Appellee Estrada supported their trespass claim. But all of Appellants' evidence of the elements of trespass are assumptions rather than evidence. In this regard, Ed's testimony was based on mere observation and raw measurement coupled with compounding assumptions: first, that H.B. Ward's headstone was in the proper place, and second, that Kay was willed an interest to the plots in her mother's will. On appeal, Appellants do not point to any evidence that would clarify whether H.B. Ward's headstone was properly placed, or evidence that a boundary of H.B. Ward's plot (plot 512) was lined up with the back of his headstone; nor was there support given as to the significance thereof as it relates to Chapter 711. The headstone placed for Ed and Kay's nephew (on plot 586) was *also* less than ten feet from the back of the headstone in the corresponding place as H.B. Ward's (Vera's plot 514); eight feet, eight inches, as opposed to the distance of eight feet, four inches between the double headstone of H.B and Lois and that of the Estrada couple. The trial court, as the factfinder in this matter concluded that not all plots appeared to be uniform, and we see no authoritative explanation for the lack of uniformity. The absence of uniformity, by itself, is not evidence of Appellee's trespass or liability.

Additionally, it was only the right of sepulture that was sold, and that right was fulfilled when H.B. Ward was buried in the plot. *See* HEALTH & SAFETY §§ 711.039(g), (h). Appellants did not provide evidence that defined the boundaries of the plots; as a result, Appellants did not prove that the Estrada headstone encroached on H.B. Ward's plot.

On appeal, Appellants contend that they only had to prove that Appellee Estrada purchased the plot and directed a monument company to place the headstone—each of these actions leading to the trespass—and that they were not

14

required to prove that Appellee Estrada intended for the gravestone to encroach on the Ward's plots. This argument ignores that, as we have discussed above, no evidence was offered to prove the elements of their trespass claim. The trial court's ultimate determination of summary dismissal was correct given Appellants failure to prove that the Estrada headstone is "on the property of another." Moreover, even if the trial court had accepted the evidence that the plots were each required to be five feet by ten feet, the Appellants still failed to meet their burden to prove each element of their trespass claim. Because Appellants failed to present evidence regarding the location of the plot boundaries at the time of the trespass or that the Estrada headstone was actually located on any plot except for the Estrada plot, no probative evidence was presented to raise a material fact issue. As a result, the trial court properly rendered judgment in favor of Appellees. We overrule Appellants' first issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


December 14, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.