**Affirmed and Memorandum Opinion filed March 5, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00239-CV

---

## SOUTHERN INDUSTRIAL ENGINES, LLC, Appellant

## V.

## STEVE BAXTER, Appellee

---

**On Appeal from the 51st District Court**
**Tom Green County, Texas**
**Trial Court Cause No. A170157C**

---

## M E M O R A N D U M   O P I N I O N

Appellant Southern Industrial Engines, LLC entered into a contract with appellee Steve Baxter whereby both parties agreed to exchange automotive work on each other's vehicles. After Southern Industrial refused to return Baxter's vehicles, Baxter filed suit and the parties proceeded to a jury trial. The jury returned a verdict, finding that Southern Industrial committed violations of the Texas Deceptive Trade Practices Act (the "DTPA") and assessed approximately $75,000 in damages. The trial court signed a final judgment incorporating the

jury's findings.

Southern Industrial appeals the trial court's final judgment and raises seven issues challenging the wording of certain jury questions and the sufficiency of the evidence supporting the jury's liability and damages findings. For the reasons below, we affirm.

BACKGROUND

Because our analyses of Southern Industrial's issues on appeal focus at length on evidentiary sufficiency, we begin with an overview of the witness testimony and evidence heard at trial.

### Steve Baxter

Steve Baxter owned West Texas Collision, which specialized in automotive body and paint work. Admitted into evidence during his testimony was an agreement signed by Baxter and Southern Industrial's owner Dusty Thompson which states, in relevant part:

> The following agreement is made between Southern Industrial Engines, LLC and West Texas Collision.
>
> Southern Industrial Engines, LLC will provide all labor and parts to overhaul engine in 1974 Toyota FJ[]. $7600.00 plus tax.
>
> [Southern Industrial] will also provide labor to diagnose and repair 2014 Ford F-250[]. Up to $1887.00
>
> The above mentioned services will be performed in trade for West Texas Collision providing all material and labor to perform body repairs and paint on 1984 MCI-9[]. Paint color will be determined by [Southern Industrial]. Total trade amount $10,000.00.

The agreement is signed by both parties and dated March 30, 2016. Summarizing the agreement's contents, Baxter said he agreed to paint Southern Industrial's bus in exchange for Southern Industrial's automotive work on his Toyota FJ Cruiser

and Ford F-250 truck.

Baxter said he purchased the FJ Cruiser in 2014 from an out-of-state auction; he paid $3,600 for the vehicle and $1,200 to have it delivered to Texas. Baxter intended the FJ Cruiser to be "a neat vehicle for a daily driver." According to Baxter, he drove the vehicle to Southern Industrial's shop and Southern Industrial was "[s]upposed to overhaul the engine." Baxter testified that he dropped the vehicle off in September 2014, approximately 1.5 years before the parties signed the written agreement. Baxter said that, to the "best of [his] knowledge," Southern Industrial did not begin to work on the FJ Cruiser until Baxter started working on Southern Industrial's bus.

With respect to the F-250, Baxter said he "made a mistake" and put diesel exhaust fluid in the F-250's fuel tank. This caused the truck's engine to "seize up." Describing this as a "common mistake," Baxter said he purchased a $5,000 "kit" to rectify the error. Baxter testified that, under the parties' agreement, Southern Industrial was supposed to "pull the engine out of the truck, fix what needed to be fixed, use the parts I purchased to fix the truck, and then that was going to come back to me." Baxter said the repair kit was given to Southern Industrial at the same time the F-250 was dropped off for its repair.

Baxter acknowledged making an insurance claim on the F-250 for the damages and receiving a $12,000 check. Baxter said $12,000 is "the normal cost for the kit and the repair" needed to restore the F-250 to working condition.

Baxter said he purchased the tools and equipment for the bus's paint job and sent a crew to Southern Industrial's shop to complete the work. Baxter said painting the bus was a "large job" that took months to complete. Admitted into evidence was an invoice from West Texas Collision showing the work on the bus cost approximately $22,000.

3

As his crew was working on the bus, Baxter recalled that the FJ Cruiser and the F-250 were left "sitting outside" Southern Industrial's shop. With respect to the FJ Cruiser, Baxter said the vehicle's "transmission had been pulled out" and "stuck" in the vehicle's bed. According to Baxter, although the vehicle was running when he took it to Southern Industrial's shop, it was no longer operable without its transmission.

Baxter testified that he repeatedly asked Thompson about the status of his vehicles, to which Thompson would reply: "We'll get it going. We're going to get into it." Baxter said he finished the bus's paint job after a few months but, as far as he could tell, no work had been done on his vehicles. According to Baxter, at that point he just wanted to get his vehicles back and offered to pay Southern Industrial for their return. Baxter said Thompson responded by saying: "I'm not working on your truck. I'm not going to do anything to your truck, and get off my property." Baxter testified that the confrontation escalated, with Thompson telling him, "I'm going to knock you out. You're not taking any of your equipment off of here. Everything's that on my property is mine. Your vehicles are on my property. They're mine." Continuing on, Baxter said Thompson told him that his "whole intention was to have [Baxter] fix the bus and keep [Baxter's] stuff."

Baxter said he continued to make monthly payments on the F-250 while it remained at Southern Industrial's shop. An exhibit admitted into evidence showed that Baxter was paying approximately $1,000 a month on the truck and continued to make monthly payments for seven months after the F-250 was dropped off in March 2016. According to Baxter, he "could no longer afford to make the payment on the [F-250] and buy another one," so he let the payments lapse after October 2016. After the F-250 was repossessed and sold in October 2017, Baxter said a $10,000 debt remained that still was outstanding as of the time of trial.

4

Baxter testified that he purchased a 2013 F-350 in October 2016 to replace the F-250 he could not retrieve from Southern Industrial. Baxter said he put approximately $28,000 down on the F-350, which was considered a "total loss vehicle" at the time of its purchase because it previously had been wrecked. Baxter said he undertook the repair on the F-350; admitted into evidence was an invoice from West Texas Collision showing that approximately $19,000 of work was done on the F-350. Baxter agreed that these were "reasonable and necessary charges" for the repair work needed on the F-350. Baxter said he paid for the $19,000 of work done on the F-350.

### *Dusty Thompson*

Dusty Thompson works as a diesel technician and owns and operates Southern Industrial. Thompson said Baxter brought the FJ Cruiser to Southern Industrial in September 2014. According to Thompson, Baxter wanted the engine rebuilt. Thompson told Baxter that the job would cost approximately $8,000-$10,000.

While working on the FJ Cruiser, Thompson said he discovered the vehicle's transmission was "cracked" and notified Baxter that the engine would need a new transmission. According to Thompson, Baxter said he would bring a new transmission for the FJ Cruiser. Thompson said his crew installed the vehicle's rebuilt engine while he waited for Baxter to supply the transmission. Thompson said he eventually moved the FJ Cruiser out of the workshop bay and into the shop's yard.

According to Thompson, Baxter came by the shop and Thompson told Baxter that he needed to pay for the work completed on the FJ Cruiser. Thompson said Baxter offered to do some bodywork for the outstanding debt. The parties agreed that Baxter would paint Thompson's bus, a $10,000 job. In exchange,

Thompson said he would trade the FJ Cruiser engine overhaul (which he valued at $7,600) and approximately $1,887 worth of labor on Baxter's F-250. According to Thompson, Baxter would be responsible to pay for any extra work that was needed on the F-250.

Thompson said that, under the parties' agreement, Baxter would be responsible for "the labor and material to complete and paint the bus." According to Thompson, Baxter was slow to send a crew to Southern Industrial's yard to work on the bus. After a crew finally was sent to work on the bus, Thompson said Baxter did not pay them. According to Thompson, Baxter showed up at the yard one day to check on the bus work and was confronted by one of his employees, who was "yelling and screaming." Thompson said he got between the two men and told Baxter to leave his property.

Thompson said he ended up paying some of Baxter's employees for the work they did on his bus. Thompson testified that he also paid for some of the supplies for the bus's paint job.

According to Thompson, the only work Southern Industrial did on the F-250 was to tow the vehicle to the shop. When Baxter tried to pick up the F-250, Thompson said there was an outstanding tow service charge of $105. Ultimately, Thompson said he refused to return Baxter's FJ Cruiser and F-250 because Thompson "ended up providing parts, material, and labor" to fulfill the portion of the parties' agreement that was supposed to be completed by Baxter. Thompson stated that Baxter "breached" the parties' agreement when Thompson "started having to pay for materials on that bus and labor for that bus."

Thompson said the F-250 left Southern Industrial's yard when it was repossessed. Thompson stated further that Baxter never brought the transmission needed to finish the FJ Cruiser's repair and that the FJ Cruiser "was not drivable

6

without a transmission."

### *Deemed Admissions*

In July 2020 (approximately two years before trial), Baxter filed a "Notice of Deemed Admissions," asserting that certain requests for admissions were deemed admitted due to Southern Industrial's failure to timely respond. Southern Industrial filed a motion to strike the deemed admissions one week later, asserting that its failure to respond was due to an accident or mistake. Southern Industrial also filed an order to set a hearing on its motion.

The parties proceeded to trial in September 2022 and, in a pre-trial conference held after the conclusion of voir dire, Southern Industrial reasserted its motion to strike the deemed admissions. Southern Industrial's counsel acknowledged that the motion was never set for a hearing but asserted that (1) Southern Industrial diligently attempted to resolve the problem, and (2) Baxter would not be prejudiced if the admissions were stricken. Responding to the motion, Baxter's counsel emphasized that the motion to strike never had been set for a hearing and that Baxter had come to trial prepared to rely on the deemed admissions for the presentation of his case.

While discussing the issue, the trial court noted that Southern Industrial had failed to raise its motion to strike at two previous pre-trial conferences. Asserting that it had "wanted to hear anything we needed to hear earlier so we don't get into a train wreck like this," the trial court reasoned that it is "incumbent upon [the movant] to get a hearing" on its motion. Denying Southern Industrial's motion to strike the deemed admissions, the trial court concluded that its counsel "demonstrated callous disregard" by failing to get the motion "ruled upon in a timely fashion." However, the trial court nonetheless permitted Southern

7

Industrial to "put on other controverting evidence."[1]

In relevant part, the following deemed admission were read to the jury:

That [Southern Industrial] did not complete its obligation to "provide labor to . . . repair [Baxter's] 2014 Ford F-250" as required by the contract.

That [Southern Industrial] did not complete its obligation to "provide all labor . . . to overhaul [Baxter's] 1974 Toyota FJ Cruiser" as required by the contract.

That [West Texas Collision] completed all the body repair and paint repair on the 60-foot Greyhound bus in compliance with the contract.

That [Southern Industrial] refused to return [Baxter's] Ford F-250 and 1974 Toyota FJ Cruiser upon request after [West Texas Collision] had completed the repairs on the bus.

That [West Texas Collision] has not been paid any sum of money for the work it performed on the bus.

That [Baxter] demanded the return of the property to which [Southern Industrial] and Dusty Thompson refused.

That due to [Southern Industrial's] refusal to return [Baxter's] Ford F250, [Baxter] had to purchase another vehicle to replace the Ford F250 to be able to continue his work.

That [Baxter] has suffered economic damages in the amount necessary to purchase a replacement vehicle due to [Southern Industrial] and Dusty Thompson's refusal to return the Ford F250 to Steve Baxter.

That Santander Consumer USA, Inc. repossessed the Ford F250 while the vehicle was still in [Southern Industrial's] possession.

---

[1] Generally, a party against whom deemed admissions are admitted at trial may not introduce evidence to controvert those admissions. *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

*Conclusion of Trial*

After the parties rested, the jury deliberated and found that Southern Industrial engaged in false, misleading, or deceptive acts or practices that Baxter relied on to his detriment and that were a "producing cause" of Baxter's damages. *See* Tex. Bus. & Com. Code Ann. § 17.46(b) (listing the acts that may be considered "false, misleading, or deceptive acts or practices" under the DTPA). The jury also returned the following damage assessments:

> The difference, if any, in the value of the 1974 Toyota FJ-40 Land Cruiser when it was received by [Southern Industrial] and the value it would have had if it had been repaired. The difference in value, if any, shall be determined at the time and place [Southern Industrial] received the vehicle from West Texas Collision.
> Answer: $3,500.

> The reasonable and necessary value of the Ford F250 truck.
> Answer: $60,000.

On November 30, 2022, the trial court signed a final judgment awarding Baxter damages in accordance with the jury's damages findings. Southern Industrial timely filed a notice of appeal and its case was transferred to this court by Texas Supreme Court Transfer Order.[2]

## ANALYSIS

Southern Industrial raises seven issues on appeal:

1. the evidence is legally insufficient to support the jury's damages assessment with respect to the FJ Cruiser;

2. the evidence is factually insufficient to support the jury's damages assessment with respect to the FJ Cruiser;

---

[2] Because of the transfer, we must decide the case in accordance with the precedent of the Third Court of Appeals if our decision otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

3. the evidence is legally and factually insufficient to support the jury's damages assessment with respect to the F-250;

4. Baxter failed to request a proper damages question to support the jury's F-250 damages assessment;

5. the jury's F-250 damages assessment should have been disregarded as immaterial;

6. the evidence is legally and factually insufficient to support the jury's finding that Southern Industrial's conduct was the producing cause of Baxter's damages with respect to the F-250; and

7. conclusive evidence supports offsetting certain amounts against the jury's F-250 damages assessment.

We consider these issues individually below.

## I.    Evidentiary Sufficiency of the FJ Cruiser Damages Assessment

In its appellate brief, Southern Industrial jointly addresses its first two issues challenging the sufficiency of the evidence to support the $3,500 assessed as damages for the FJ Cruiser. Asserting that the associated question sought to recover "benefit of the bargain" damages, Southern Industrial argues that the evidence is legally and factually insufficient to support the jury's $3,500 finding because "there was no evidence as to the fair market value had the [FJ Cruiser's] repairs been completed."

For a legal sufficiency review, we consider the evidence in the light most favorable to the challenged finding. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.). Evidence is legally insufficient if reasonable and fair-minded people could not reach the conclusion under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding of fact on which it did

10

not have the burden of proof, the appellant must show that there is no evidence, or merely a scintilla of evidence, to support the adverse finding. *City of Austin*, 428 S.W.3d at 407.

For a factual sufficiency review, we examine in a neutral light the evidence that both supports and contradicts the jury's finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *City of Austin*, 428 S.W.3d at 407. We consider and weigh all of the evidence and set aside the challenged finding only if the evidence that supports the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *City of Austin*, 428 S.W.3d at 407. Nonetheless, we defer to the jury's implicit determinations of credibility and weight to be given to the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

Here, Southern Industrial's legal and factual sufficiency challenges with respect to the jury's $3,500 damages assessment focus on the alleged lack of evidence showing the FJ Cruiser's market value when the repairs were completed. The Austin Court of Appeals recently considered a similar argument and concluded that, because the appellant did not raise the issue in the trial court, it was not the appropriate standard by which to judge the sufficiency of the evidence. *See Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 161 (Tex. App.—Austin 2017, pet. denied) (en banc).

In *Elness Swenson*, the appellant's argument on appeal "focus[ed] on the propriety of the expert's testimony . . . about the reduction in the *market value* of the hotel[.]" *Id*. (emphasis in original). But the relevant jury question did "not ask about differences in market value" nor was market value "defined or mentioned at any point in the jury charge." *Id*. Rather, the jury question only inquired as to the difference between the value of the defectively built hotel and the hotel's value if it

had been properly constructed. *Id.* Pointing out that the appellant "did not object in the trial court to the language of [the jury question], propose different language, or request an instruction related to market value," the court held that sufficiency of the evidence would be measured only against the language in the charge as given — not the language the appellant asserted should have been included. *Id.*; *see also Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) ("The sufficiency of the evidence must be measured by the jury charge when, as here, there has been no objection to it.").

Similarly here, the relevant question asked the jury to assess:

[t]he difference, if any, in the value of the 1974 Toyota FJ-40 Land Cruiser when it was received by [Southern Industrial] and the value it would have had if it had been repaired. The difference in value, if any, shall be determined at the time and place [Southern Industrial] received the vehicle from West Texas Collision.

In the trial court, Southern Industrial did not object to the wording of the question or request an instruction related to market value. Therefore, the alleged absence of evidence with respect to the FJ Cruiser's market value is not determinative of our evidentiary sufficiency analysis — we measure the evidence against the charge as given. *See Romero*, 166 S.W.3d at 221; *Elness Swenson Graham Architects, Inc.*, 520 S.W.3d at 161.

"The jury has discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for the jury's calculation." *Elness Swenson Graham Architects, Inc.*, 520 S.W.3d at 162. Therefore, a jury's damages finding will not be disregarded merely because its reasoning in arriving at its figure may be unclear; there is no requirement that a damages award match up precisely with figures presented into evidence. *Pleasant v. Bradford*, 260 S.W.3d 546, 559-60 (Tex. App.—Austin 2008, pet. denied).

12

Here, considered in light of the charge language, we conclude the record contains legally and factually sufficient evidence to support the jury's $3,500 damages assessment.

Baxter testified that he purchased the FJ Cruiser in 2014 for $3,600. Shortly thereafter, Baxter said he drove the vehicle to Southern Industrial's shop for an engine overhaul. Signed approximately 1.5 years later, the parties' agreement states that "Southern Industrial Engines, LLC will provide all labor and parts to overhaul engine in 1974 Toyota FJ." The agreement states that the price for this service is $7,600 plus tax.

Although the parties' agreement states that "all labor and parts" for the FJ Cruiser's engine overhaul were to be provided by Southern Industrial, the jury also heard testimony suggesting that Baxter failed to provide parts necessary to complete the vehicle's work. Specifically, Thompson said he told Baxter that the FJ Cruiser's transmission was cracked and would need to be replaced. According to Thompson, Baxter repeatedly said he would bring a new transmission for the FJ Cruiser but never followed through. Thompson testified that the work on the FJ Cruiser's engine was complete except for the necessary transmission. Therefore, although Baxter had driven the FJ Cruiser to Southern Industrial's shop in 2014, the vehicle was no longer in a drivable condition.

This testimony and evidence is legally and factually sufficient to support the jury's finding of $3,500 as "[t]he difference, if any, in the value of the 1974 Toyota FJ-40 Land Cruiser when it was received by [Southern Industrial] and the value it would have had if it had been repaired." The evidence shows the parties agreed that $7,600 in work would be performed by Southern Industrial to rebuild the FJ Cruiser's engine; however, the jury also heard that Baxter did not provide all parts necessary for the repair, which prevented the vehicle from being restored to a

13

drivable condition. The evidence therefore supports awarding less than the full $7,600 contracted for the repair. Measured against the jury charge and in light of the discretion afforded to a jury's damages assessments, we conclude the jury's $3,500 finding is supported by legally and factually sufficient evidence. *See Romero*, 166 S.W.3d at 221; *Elness Swenson Graham Architects, Inc.*, 520 S.W.3d at 162.

We overrule Southern Industrial's first and second issues.

## II. Evidentiary Sufficiency of the F-250 Damages Assessment and the Wording of the Associated Jury Question

In its appellate brief, Southern Industrial also jointly addresses its third and fourth issues, which challenge the F-250 damages question and the jury's response thereto. This question asked the jury to assess "[t]he reasonable and necessary value of the Ford F250 truck," to which the jury responded: "$60,000."

Southern Industrial alleges the wording of the question is deficient for the following reasons: (1) the question did not inquire as to "the fair market value difference on the F-250," which is the proper measure of damages under a "benefit of the bargain" theory; (2) the wording of the question "simply does not fit any definition of damages that can be awarded in a DTPA cause of action"; (3) the question did not ask the jury to value the F-250 "at any particular time"; and (4) the question did not ask "what condition the truck was in at the time the jury found it to have a value of $60,000."

However, Southern Industrial did not raise these objections in the trial court. Therefore, its current objections to the question's wording and any alleged omissions therein were waived. *See* Tex. R. Civ. P. 274 (a party objecting to a charge must specify the objectionable matter and the grounds of the objection; any complaint concerning any defect, omission, or fault in the pleading is waived

14

unless specifically included in the objection); *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014) (same); *see also, e.g.*, *Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.*, 817 S.W.2d 160, 164-65 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (concluding the appellant "waived any objection to the wording of question 13 since [the appellant] did not object to the submission of question 13 on this basis").

Southern Industrial also asserts the submission of the F-250 damages question contravenes Texas Rule of Civil Procedure 278, which requires the trial court to submit those questions "which are raised by the written pleadings and the evidence." *See* Tex. R. Civ. P. 278. To support this argument, Southern Industrial points out that Baxter's live petition makes no mention of the "reasonable and necessary value of the Ford F250." But like the challenges discussed above, Southern Industrial did not assert this objection in the trial court and raised it for the first time on appeal. Therefore, it too is waived. *See* Tex. R. Civ. P. 274.

Finally, Southern Industrial asserts the evidence is legally and factually insufficient to support the jury's F-250 damages assessment because "[n]ot a single witness testified to the 'reasonable and necessary value' of the F250." We disagree.

Southern Industrial did not cite any case law to support its contention that witnesses must specifically testify as to "reasonable and necessary value" when a jury question asks for the same, and we decline to reach that conclusion here. *See also Reinhardt v. Walker*, No. 14-07-00304-CV, 2008 WL 2390482, at *5 (Tex. App.—Houston [14th Dist.] June 12, 2008, pet. denied) (mem. op.) ("Concerning the absence of specific testimony stating that the repairs were 'reasonable and necessary,' we have not in the past required testimony utilizing such specific words but instead considered whether the plaintiff has presented sufficient evidence to

15

justify the finding that the costs at issue were reasonably and necessarily sustained."); *Country Vill. Homes, Inc. v. Patterson*, 236 S.W.3d 413, 442 (Tex. App.—Houston [1st Dist.] 2007, pet. granted, judgm't vacated w.r.m.) ("It is not necessary to use the words 'reasonable' and 'necessary' to establish the right to recover costs of repair.").

Our review of the record shows that legally and factually sufficient evidence supports the jury's finding of $60,000 as the "reasonable and necessary value of the Ford F250 truck." Baxter said he continued to make $1,000 monthly payments on the F-250 for seven months after the truck was dropped off at Southern Industrial. After the F-250 was repossessed and sold, Baxter testified that a $10,000 debt remained. According to Baxter, he purchased a 2013 F-350 in October 2016 to replace the F-250 he was unable to retrieve from Southern Industrial and put approximately $28,000 down for the vehicle's purchase. Baxter said the F-350 was a "total loss vehicle" and required $19,000 of work, which he completed. Taking these figures together, they show that approximately $64,000 was spent to recoup the value of the F-250 that could not be retrieved from Southern Industrial. Therefore, this evidence is legally and factually sufficient to support the jury's $60,000 finding.

## III.   The Wording of the F-250 Damages Question

In its fifth issue, Southern Industrial reiterates arguments raised in its third and fourth issues regarding the F-250 damages question and asserts (1) the question did not inquire as to "the fair market value difference on the F-250," which is the proper measure of damages under a "benefit of the bargain" theory; (2) the wording of the question "simply does not fit any definition of damages that can be awarded in a DTPA cause of action"; (3) the question did not ask the jury to value the F-250 "at any particular time"; (4) the question did not ask "what

16

condition the truck was in at the time the jury found it to have a value of $60,000";
(5) Baxter's petition failed to plead damages for the "reasonable and necessary value of the Ford F250"; and (6) no witnesses specifically testified as to "reasonable and necessary value" of the F-250.  For the reasons discussed above in Section II, we overrule these arguments.

We overrule Southern Industrial's fifth issue.

## IV.  Evidentiary Sufficiency of the Jury's "Producing Cause" Finding

Question No. 1 asked the jury as follows with respect to Southern Industrial's liability under the DTPA:

Did [Southern Industrial] engage in any false, misleading, or deceptive act or practice that Steve Baxter relied on to his detriment and that was a producing cause of damages to Steve Baxter?

"Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred.  There may be more than one producing cause.

"False, misleading, or deceptive act or practice" means any of the following:

1.   Representing that goods or services are or will be of a particular standard, quality, or grade if they were of another;

2.   Representing that goods or services have characteristics which they do not have;

3.   Failing to disclose information about goods or services that was known at the time of the transaction with the intention to induce Steve Baxter into a transaction he would not have entered into if the information had been disclosed;

4.   Advertising services with intent not to sell them as advertised; or

5.   Representing that work or services were performed on goods,

17

or parts were replaced in goods when the work or services were not performed on goods, or the parts were not replaced.

The jury responded, "Yes." On appeal, Southern Industrial argues that the evidence is legally and factually insufficient to "support a finding that [Southern Industrial] was the 'producing cause' of the repossession of the F250."

We disagree. At trial, Southern Industrial's counsel asked Baxter why he purchased the F-350 instead of "paying your payments and keeping your original vehicle." In response, Baxter testified: "I couldn't get the original vehicle back from [Southern Industrial]. I had to replace it. That was not my choice. I had to run my business." Continuing on, Baxter said he "needed a vehicle for use for [his] shop. That was my shop vehicle." Baxter repeatedly testified that Southern Industrial and Thompson refused to return the F-250.

The jury also heard the following deemed admissions that were read into evidence:

> That [Southern Industrial] refused to return [Baxter's] Ford F-250 and 1974 Toyota FJ upon request after [West Texas Collision] had completed the repairs on the bus.

> That due to [Southern Industrial's] refusal to return [Baxter's] Ford F250, [Baxter] had to purchase another vehicle to replace the Ford F250 to be able to continue his work.

> That [Baxter] has suffered economic damages in the amount necessary to purchase a replacement vehicle due to [Southern Industrial] and Dusty Thompson's refusal to return the Ford F250 to Steve Baxter.

> That Santander Consumer USA, Inc. repossessed the Ford F250 while the vehicle was still in [Southern Industrial's] possession.

From this evidence, the jury reasonably could find that Southern Industrial engaged in a false, misleading, or deceptive act or practice that was a substantial

18

factor in brining about Baxter's damages, *i.e.*, the loss of the reasonable and necessary value of the F-250 that Baxter was unable to retrieve from Southern Industrial. This includes damages that stem from the F-250's repossession which, according to Baxter's testimony, he believed were necessary to enable him to purchase a replacement vehicle. Accordingly, the evidence is legally and factually sufficient to support this challenged finding.

We overrule Southern Industrial's sixth issue.

## V.     Offset

In its seventh issue, Southern Industrial asserts that it is entitled to offset two amounts against the jury's $60,000 F-250 damages assessment:  (1) the $12,000 insurance check Baxter received prior to taking the F-250 to Southern Industrial, and (2) the F-250's $37,000 purchase price when it was sold at auction following its repossession.

"The right to offset is an affirmative defense. The burden of pleading and proving facts necessary to support an affirmative defense of offset rests on the party making the assertion." *White v. Baugh*, No. 03-05-00704-CV, 2008 WL 2219987, at *7 (Tex. App.—Austin May 28, 2008, no pet.) (mem. op.) (citing *Mays v. Bank One, N.A.*, 150 S.W.3d 897, 899 (Tex. App.—Dallas 2004, no pet.)). Here, Southern Industrial did not plead the affirmative defense of offset nor did it request a jury instruction on the issue. Therefore, Southern Industrial waived its arguments regarding offset and cannot raise them for the first time on appeal. *See id.*; *see also, e.g.*, *Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 891 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("But the [appellee] did not plead offset as a defense, nor did it object to the jury questions regarding damages or request alternative questions. The argument is therefore waived."); *Columbia Med. Ctr. of Las Colinas v. Bush*, 122 S.W.3d 835, 862 (Tex. App.—

19

Fort Worth 2003, pet. denied) ("Regardless of the merits of Appellants' argument that they are entitled to an offset, because they did not plead an affirmative defense of offset, the issue is waived.").

We overrule Southern Industrial's seventh issue.

## CONCLUSION

We affirm the trial court's November 30, 2022 final judgment.

/s/ Meagan Hassan
   Justice

Panel consists of Justices Hassan, Poissant, and Wilson.